S92A1249. HEAD v. THE STATE.
(426 SE2d 547)

SEARS-COLLINS, Justice.

The appellant, Keevin Cornelius Head, was convicted and sentenced for the malice murder of Carol Williams Murdaugh, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a felony.[1] For the following reasons, we affirm.

The victim, Murdaugh, was reported missing on July 15, 1991. On July 29, based on a lead about Head's involvement with the victim, Head was arrested on an outstanding probation violation. Head was questioned about the disappearance of Murdaugh and gave four separate statements. The third and fourth statements Head made were incriminating. In the third statement, Head stated that he considered himself to be romantically involved with the victim. Head further stated that on the day of the crime he and the victim were arguing while riding in his car when the victim told the appellant that he was a "nobody in her life." According to Head, during the same car trip, he took out his gun to show it to the victim and, when he attempted to grip it, it accidentally fired and hit her in the head.

After this statement, Head agreed to lead the detectives to the body, but then stalled, and, when asked why he was stalling, admitted that he did not want the detectives to find the body because he knew that it would reveal that he had been lying to them in his pre-trial statements about how the shooting took place. Head did, however, voluntarily lead police officers to the victim's shallow grave.

In Head's fourth statement, which was given after he had led police to the body, Head related essentially the events as those he had related in his third statement except that he added that the gun fired accidentally approximately six or seven times.

The desk clerk at the motel where Head had been staying at the time of the incident contradicted the version of events that Head gave in his statements. She stated that Head called her on the morning of July 16, 1991, and informed her that he and the victim had ridden around; that he had pulled over and asked the victim to get out and

---

[1] The crimes occurred on July 15, 1991. Head was indicted on October 15, 1991. The verdict was returned on April 10, 1992, and the sentence was filed on April 15, 1992. Head filed a motion for new trial on April 30, 1992. The court reporter certified the transcript on May 14, 1992, and the trial court denied the motion for new trial on May 21, 1992. Head filed his notice of appeal on June 18, 1992. The record was docketed in this court on July 13, 1992. The appeal was argued on October 19, 1992.

walk and talk; and that as they walked he put a gun to the victim's head and shot her several times. The desk clerk also testified that Head had told her at some point during the two weeks before the victim's death that he had decided to shoot the victim because she was not interested in their relationship because Head had refused to loan her $500.

Forensic evidence showed that the type of pistol used by Head could not have been converted to an automatic mode that might have allowed the gun to accidentally unload multiple shots into the victim. Moreover, there was testimony that the location of the bloodstains in the car and the location of the bullet holes in the victim's body showed that the shooting did not take place in the car.

There was also evidence introduced at trial that at the time of the homicide Head had previously been convicted of two counts of criminal attempt to commit theft by taking.

Head did not testify at trial and did not offer any other witnesses in his defense.

1. In his sixth enumeration of error, Head contends that the evidence is insufficient to support his murder conviction. However, construing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Head guilty of malice murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his first enumeration of error, Head contends that the trial court expressed partiality to the victim in refusing to accept Head's plea of guilty to voluntary manslaughter and that the court therefore abused its discretion in refusing to accept the plea. We find no error. Although the trial court did state that its job was to protect the rights of the victim and the accused, that the crime was a "black on black crime," and that there were not many people there "on behalf of the victim," a review of the lengthy discussions concerning the guilty plea make clear that the trial court refused to accept Head's plea of guilty to voluntary manslaughter because the court believed there was insufficient evidence to support that crime and not because the court was partial toward the victim. The court did not err in rejecting the plea. See *Pass v. State*, 227 Ga. 730 (3) (182 SE2d 779) (1971); *Echols v. State*, 167 Ga. App. 307 (1) (306 SE2d 324) (1983); Uniform Superior Court Rule 33.9 (before accepting plea a trial court should make sufficient inquiry to satisfy the court that there is a factual basis for the plea).

3. In his second enumeration of error, Head argues that his pretrial statements should not have been entered into evidence.

(a) Concerning his first statement, Head contends he was informed he would be questioned about the probation violation warrant and was not informed he would be questioned about the disappear-

ance of Murdaugh. He also contends he requested an attorney before questioning began. However, the transcript of the *Jackson-Denno* hearing contains evidence showing that Head was informed he would be questioned about the Murdaugh case, that he was read his *Miranda* rights, that he signed a waiver-of-rights form, and that he did not invoke his right to an attorney. This evidence supports the trial court's findings that Head was informed of the nature of the charges against him and waived his *Miranda* rights. Because we must defer to the trial court's findings unless clearly erroneous, and because the court's findings were not clearly erroneous, we find no error in the court's decision to admit Head's first statement into evidence. *Terry v. State*, 259 Ga. 165, 169 (2) (377 SE2d 837) (1989).

(b) Head next contends that his last three statements should have been suppressed because he was not re-advised of his *Miranda* rights and because the officers denied him food and sleep over the approximately twenty-six-hour period in which the four statements were made. Head also contends he was threatened with the electric chair if he did not cooperate.

However, again, the transcript of the *Jackson-Denno* hearing contains evidence supporting the trial court's findings that Head was not denied food and sleep, that he was not threatened, and that he freely and voluntarily waived his rights and made the statements. *White v. State*, 255 Ga. 210, 212 (336 SE2d 777) (1985). Moreover, the transcript supports the trial court's finding that Head was fully re-advised of his *Miranda* rights before the third statement, and was asked before the second and fourth statements if he understood the rights of which he had previously been informed. We conclude that Head was adequately apprised of his rights. See *Newberry v. State*, 260 Ga. 416, 419 (4) (395 SE2d 813) (1990).

For the foregoing reasons, the trial court did not err in admitting the last three statements into evidence.

4. In Counts 1 through 6 of his indictment Head was indicted respectively of the following: malice murder; felony murder with the underlying offense being aggravated assault; felony murder with the underlying offense being possession of a firearm by a convicted felon; aggravated assault; possession of a firearm by a convicted felon; and possession of a firearm during the commission of a crime. Appellant moved the court during pre-trial motions to bifurcate the trial on Count 5 from Counts 1 through 4 and Count 6. The trial court denied the motion. The jury returned a verdict finding appellant guilty of all six charged counts.[2]

---

[2] Counts 2 and 3 (the felony murders) and 4 (the aggravated assault) were merged with Count 1 (the malice murder) for sentencing.

In his third enumeration of error, Head contends the court committed reversible error by failing to instruct the jury about the limited relevance to the indictment as a whole of Count 6. However, because Head relies on cases dealing with problems arising in murder trials from counts involving the possession of a firearm by a convicted felon, we read this enumeration as attacking the trial court's failure to instruct the jury as to the relevance of Count 5 of the indictment. In this regard, we find no error.

As the appellant concedes, in *Head v. State*, 253 Ga. 429, 432 (322 SE2d 228) (1984), we held that, *upon request*, a trial court must give a limiting instruction concerning the evidence of prior convictions. Head, however, contends that in *Kellum v. State*, 258 Ga. 536 (371 SE2d 405) (1988), we modified the rule of *Head* so as to place an affirmative duty on a trial court to give a limiting instruction even absent a request. *Kellum* does contain language to the effect that a trial court *"shall"* give a limiting instruction and does not predicate the necessity for the instruction upon a request by the defendant. However, the opinion in *Kellum* is silent regarding whether a request to charge was made in that case, and if one was made, *Kellum* would be consistent with *Head*. In any event, we hold that to the extent *Kellum* appears to negate the requirement of a request to charge, *Kellum* is overruled. We so hold, first, because we have reiterated the request requirement in other cases following *Head*, see *Reeves v. State*, 258 Ga. 619, 621 (373 SE2d 16) (1988); *Hall v. State*, 259 Ga. 243, 244 (378 SE2d 860) (1989); *Kellam v. State*, 260 Ga. 464, 465 (396 SE2d 894) (1990), and second, because the general rule is that

> when evidence is admitted for one purpose, as it was in the instant case, it is not error for the court to fail to instruct the jury to limit its consideration to the one purpose for which it is admissible, *in the absence of a request to so instruct the jury*.

*Reeves*, supra, 258 Ga. at 621, quoting *Harrell v. State*, 241 Ga. 181, 186 (2) (243 SE2d 890) (1978). (Emphasis in *Harrell*.)

For these reasons, the trial court did not err by failing to give a limiting instruction concerning Count 5 of the indictment.

5. In his fourth enumeration of error, Head contends that the court gave a sequential charge requiring the jury to consider voluntary manslaughter only if it considered and found him not guilty of malice murder and felony murder, and that this charge was error under *Edge v. State*, 261 Ga. 865 (2) (414 SE2d 463) (1992). We find that the trial court did not give a sequential charge.

The trial court first defined the offenses of malice murder and felony murder and instructed the jury that it had to specify on the

verdict form whether it found the defendant guilty or not guilty of malice murder and felony murder. The court then told the jury voluntary manslaughter was a lesser included offense of both malice murder and felony murder and charged the jury on the elements of voluntary manslaughter. The court subsequently told the jury that it had to consider the evidence and instructions for each count of the indictment separately and return a verdict of guilty or not guilty on every count. In this regard, the court explained that voluntary manslaughter was included on the verdict form for the counts of malice murder and felony murder. After some deliberation, the jury asked for a recharge on malice murder and voluntary manslaughter. The court first recharged on the elements of malice murder. The court then told the jury that voluntary manslaughter was a lesser included offense of malice murder and defined voluntary manslaughter for the jury. On two subsequent occasions the jury asked for further instructions on voluntary manslaughter. On both occasions the court simply instructed the jury on voluntary manslaughter, without stating that that offense was a lesser included offense of murder.

In *Edge* this Court held that a charge is sequential if it requires "the jury to consider voluntary manslaughter *only* if it has considered and found the defendant not guilty of malice murder and felony murder." *Edge*, supra, 261 Ga. at 867. (Emphasis in original.)

In this case, Head contends the court's charge was sequential because the court referred to voluntary manslaughter as a lesser included offense of malice murder and felony murder. We disagree. First, in a legal sense, the phrase "lesser included offense" does not mean that a sequential consideration must be given to the greater offense and the lesser offense; it simply means that, when one offense is included within another offense under OCGA § 16-1-6, a defendant cannot be convicted and sentenced for both offenses, OCGA § 16-1-7. Moreover, even assuming the jury would not have known the legal meaning of the phrase, we do not think a reasonable juror would have understood the trial court's references to voluntary manslaughter as a lesser included offense as directing the jury to consider the possible verdicts in any particular sequence. More specifically, viewing the court's charge as a whole, including the last two recharges on only voluntary manslaughter in which the trial court did not refer to that offense as a lesser included offense, we do not think a reasonable juror would have concluded that the court was instructing the jury that it could consider voluntary manslaughter *only if* it found Head not guilty of malice murder and felony murder. For these reasons, we hold that the court's charge did not violate *Edge*.

6. Head proffered a requested charge of self-defense, along with a requested charge of accident. The requested charge of self-defense was rejected by the trial court. In his fifth enumeration of error, Head

contends that the trial court's failure to instruct the jury on self-defense constitutes reversible error. Head relies on *Turner v. State*, 262 Ga. 359 (418 SE2d 52) (1992). We find *Turner* inapplicable to the instant case. In *Turner*, we held that charges on both accident and self-defense should be given when the court finds evidence in support of both defenses. However, in this case, there was no evidence to indicate that the appellant was justified in using deadly force against the victim to protect himself.

*Judgment affirmed. Clarke, C. J., Hunt, P. J., Benham, Fletcher, Sears-Collins, Hunstein, JJ., and Judge W. J. Forehand concur.*

HUNT, Presiding Justice, concurring.

I agree with the result achieved in the foregoing opinion, but I write separately to consider the scope of *Edge*.

Head's argument that our decision in *Edge v. State*, 261 Ga. 865 (414 SE2d 463) (1992), requires a reversal of his conviction because of a sequential charge is inapt. Head was convicted of malice murder, not felony murder. A malice murder conviction does not invoke the sequential charge error addressed in *Edge*.[3] That error exists only in the context of the problem in *Edge*, where voluntary manslaughter could be automatically subsumed by felony murder when the homicide occurs as the result of an aggravated assault upon the victim — an aggravated assault that *might* have been the result of provocation which could be found to constitute mitigation sufficient for a verdict of voluntary manslaughter. Malice murder, both by statutory definition and by the court's jury instructions in this case, excludes as a matter of law any consideration of voluntary manslaughter. Malice murder simply negates the element of mitigation, precluding a finding by the jury of voluntary manslaughter. This is so because the jury, in order to return a verdict of malice murder, necessarily decides that the killing was done without mitigation or provocation. On the other hand, before the *Edge* decision, a jury could automatically arrive at a felony murder conviction on facts which would have authorized a voluntary manslaughter conviction as well. The evil of the sequential charge was that it encouraged such an automatic finding of felony murder.

---

[3] Even so, the better practice would be for a trial court not to predicate the jury's consideration of voluntary manslaughter upon a finding of not guilty of malice murder. Our objection to "sequential" charges is not so much the order in which the crimes are defined by the trial court as it is the requirement that the jury reject one crime before proceeding even to a consideration of another.

DECIDED FEBRUARY 25, 1993.

*Steven P. Berne, Michael Mears,* for appellant.

*Robert E. Wilson, District Attorney, Robert W. Houman, Stacy Y. Cole, Assistant District Attorneys, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Rachelle L. Strausner, Staff Attorney,* for appellee.